UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORAIN OBOMANU, as Personal
Representative of the Estate of
SABRIE L. ALEXANDER, Deceased,

    Plaintiff,

vs.                                                                   Case No. 17-11435

MILLICENT WARREN, et al.,                HON. AVERN COHN

    Defendants.
_____/

**MEMORANDUM AND ORDER
DISMISSING STATE LAW CLAIMS WITHOUT PREJUDICE
AND
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS
(Docs. 45, 50)
AND
DISMISSING CLAIRE PEI, ROBERT LACY, MOHAMMAD IRFAN, and MARY
CLOSSER**

I. Introduction

This is a prisoner civil rights case involving a death. Plaintiff Lorain Obomanu, as personal representative of the estate of Sabrie L. Alexander, is suing thirty-seven individuals, two health services companies, and ten unnamed defendants, for a total of forty-one (41) defendants.[1] Plaintiff asserts a federal claim under 42 U.S.C. § 1983 for deliberate indifference to serious medical needs and a state law claim for gross negligence under M.C.L. § 691.1407. In broad terms, plaintiff says that defendants failed to provide proper care for Alexander's medical conditions which ultimately resulted in her death. The complaint asserts eight counts, as follows:

---

[1]Some of the defendants have filed answers. Other defendants have yet to be served.

Count I - deliberate indifference against corrections/custodial defendants

Count II - deliberate indifference against mental health service defendants

Count III - deliberate indifference against medical service defendants

Count IV - 8th Amendment cruel and unusual punishment against all defendants

Count V - supervisory liability against certain corrections/custodial defendants

Count VI - gross negligence against corrections/custodial defendants

Count VII - gross negligence against mental health service defendants

Count VIII - gross negligence against medical service defendants

Before the Court is a motion to dismiss brought by the two health care companies, Corizon and Valitas, along with the following individuals: Claire Pei, Aryan Taymour, Robert Lacy, Pu Qin, and Mohammad Azimi. (Doc. 45). Mohammad Irfan and Mary Closser have joined in the motion. (Doc. 50). For the reasons that follow, the motion will be granted in part and denied in part. Specifically,

1. The gross negligence claims (Counts VI, VII, VIII) are DISMISSED WITHOUT PREJUDICE as the Court declines to exercise supplemental jurisdiction over them.

2. Count IV is DISMISSED as duplicative of Counts I, II, and III.

3. Pei, Lacy, Irfan, and Closser are DISMISSED.

II. Background

This case involves the death of Alexander, a 27 year old woman, while she confined at the Women's Huron Valley Correctional Center. Alexander was incarcerated from April 17, 2014 until November 17, 2014, the date of her death. Alexander suffered from a variety of medical conditions including a seizure disorder and

mental health issues (bi-polar, anxiety, borderline personality). Alexander also had a bladder condition and asthma. Plaintiff alleges that during Alexander's seven month period of incarceration, her pleas for medical attention were ignored and she was punished for seeking attention by being placed in segregation and solitary confinement. While plaintiff alleges several instances of improper medical care, the most significant allegations pertain to the treatment of Alexander's seizures. The complaint alleges that Alexander was not given her seizure medication for the first eight days she was in custody and missed dosages of the medication over 80 times thereafter.

The 179 paragraph complaint names the following defendants:

1. Millicent Warren, Warden of Ypsilanti MDOC WHV Facility
2. David Johnson, Assistant/Deputy Warden of Ypsilanti MDOC WHV Facility
3. S.A. Thomas, Assistant/Deputy Warden of Ypsilanti MDOC WHV Facility
4. Sgt. Troy Anthony Browning, Sergeant/Corrections Officer Ypsilanti MDOC WHV Facility
5. Lt. Michael Nelson, Lieutenant/Corrections Officer Ypsilanti MDOC WHV Facility
6. Capt. Tonya Allen, Captain, Corrections Officer Ypsilanti MDOC WHV Facility
7. Kenneth Mott, Corrections Officer Ypsilanti MDOC WHV Facility
8. Natasha Smith, Corrections Officer Ypsilanti MDOC WHV Facility
9. Tricia Kincannon, Corrections Officer Ypsilanti MDOC WHV Facility
10. Kristin Potter, Corrections Officer Ypsilanti MDOC WHV Facility
11. Keona Smith, Corrections Officer Ypsilanti MDOC WHV Facility
12. Denise Armstrong, MS, psychologist for Ypsilanti MDOC WHV Facility
13. Anne Marie Hancock, MS, psychologist for the MDOC WHV Facility
14. Phyllis M. Wright, MS, psychologist for Ypsilanti MDOC WHV Facility
15. Aryan K. Taymour, PA, physician assistant for Ypsilanti MDOC WHV Facility
16. Alice Kramer, PA-C, physician assistant for MDOC WHV facility
17. Mohammed I. Azimi, physician for Ypsilanti MDOC WHV facility
18. Arun Kulkarni, MD, physician for Ypsilanti MDOC WHV facility
19. Pu Qin, MD, physician for Ypsilanti MDOC WHV facility
20. Clare Pei, MD, physician for Ypsilanti MDOC WHV facility
21. Mohammed Irfan, MD, physician for Ypsilanti MDOC WHV facility
22. Mary Closser, DO, physician for Ypsilanti MDOC WHV facility
23. Marcia Porter, RN, registered nurse at Ypsilanti MDOC WHV facility
24. Crystal Fisher, RN, registered nurse at Ypsilanti MDOC WHV facility

25. Shanda Holmes, RN, registered nurse at Ypsilanti MDOC WHV facility
26. Pennie Iott, RN, registered nurse at Ypsilanti MDOC WHV facility
27. Brianna Sharp, RN, registered nurse at Ypsilanti MDOC WHV facility
28. Bernard Gross, RN, registered nurse at Ypsilanti MDOC WHV facility
29. Laura McDonald, RN, registered nurse at Ypsilanti MDOC WHV facility
30. Shermanstine Morrow, RN, registered nurse at Ypsilanti MDOC WHV
31. Darron G. Patterson, LPN, licensed practical nurse at Ypsilanti MDOC WHV facility
32. Sara Richter, LPN, licensed practical nurse at Ypsilanti MDOC WHV facility
33. W. Miles, LPN, licensed practical nurse at Ypsilanti MDOC WHV facility
34. Robert Lacy, DO, physician at Ypsilanti MDOC WHV facility
35. Kelly M. McDonnell, RN, registered nurse at Ypsilanti MDOC WHV facility
36. Rosemary Novotny, RN, registered nurse at Ypsilanti MDOC WHV facility
37. Angel A. Izua Gbe, GBE
38. John Does 1-5
39. Jane Does 1-5
40. Corizon Healthcare, Inc.
41. Valitas Health Services, Inc.

The defendants can be categorized as follows: (1) corrections/custodial defendants, (2) mental health service defendants, and (3) medical service defendants.

### III. Supplemental Jurisdiction

As an initial matter, federal district courts have original subject-matter jurisdiction over cases arising under federal law. 28 U.S.C. § 1331. As such, the Court has subject-matter jurisdiction over the claims against defendants under Counts I - V. The remaining counts, Counts VI - VIII are based on state law. Although the Court has supplemental jurisdiction over state-law claims under 28 U.S.C. § 1367(a),[2] it may decline to exercise supplemental jurisdiction if the state-law claim "substantially predominates over the claim or claims over which the district court has original

---

[2]28 U.S.C. § 1367 provides that "the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy." 28 U.S.C. § 1367(a)

jurisdiction," or if "there are other compelling reasons for declining jurisdiction." Id. § 1367(c)(2), (c)(4).

Here, plaintiff's state law claims would be more appropriately adjudicated by the state court and adjudication in federal court would result in the undue confusion of the jury. See § 1367(c) (1), (c)(4); Padilla v. City of Saginaw, 867 F. Supp. 1309, 1315 (E.D. Mich.1994). Therefore, the Court declines to exercise supplemental jurisdiction over the state law claims under Counts VI - VIII.[3]

## IV. Motion to Dismiss

### A. Legal Standard

A Rule 12(b)(6) motion tests the sufficiency of a plaintiff's pleading. The Rule requires that a complaint "contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) (internal citation omitted). A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662; 129 S. Ct. 1937, 1949 (2009). The court is "not bound to accept as true a legal conclusion couched as a factual allegation."

"In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), th[e] Court

---

[3]In light of this decision, it is not necessary to address defendants' arguments in support of dismissal of plaintiff's gross negligence claims.

5

may only consider 'the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice.'" Murray v. Geithner, 624 F. Supp. 2d 667, 671 (E.D. Mich. 2009) (citing 2 James Wm. Moore et al., Moore's Federal Practice 12.342 (3d ed. 2000)); see also Weiner v. Klais & Co., 108 F.3d 86, 89 (6th Cir. 1997) (holding that a document incorporated by reference in a complaint can be introduced by a defendant if it is not attached by plaintiff).

B.  Analysis

1.  Pleading a § 1983 Claim

a.  Count IV

As an initial matter, as defendants point out, although plaintiff has plead separate "deliberate indifference" claims under § 1983 and a "cruel and unusual conditions of confinement" claim under the 8th Amendment, they are more appropriately considered a single claim.  See Wilson v. Seiter, 501 U.S. 294, 303 (1991) (("[W]e see no significant distinction between claims alleging inadequate medical care and those alleging inadequate 'conditions of confinement.'").  Thus, Count IV must be dismissed as duplicative of Counts I, II, and III.

b.  Deliberate Indifference

Regarding pleading a § 1983 deliberate indifference claim, the Eighth Amendment's Cruel and Unusual Punishment Clause prohibits prison officials from inflicting "unnecessary and wanton infliction of pain" upon inmates.  Ivey v. Wilson, 832 F.2d 950, 954 (6th Cir. 1987) (internal citations omitted). " 'Deliberate indifference' by prison officials to an inmate's serious medical needs constitutes 'unnecessary and

6

wanton infliction of pain' in violation of the Eight[h] Amendment's prohibition against cruel and unusual punishment." Miller v. Calhoun Cty., 408 F.3d 803, 812 (6th Cir. 2005) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).

A deliberate indifference claim has an objective and a subjective component. Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir. 2001). The objective component requires a plaintiff to allege that the medical need at issue is " 'sufficiently serious.' " Id. at 702-03 (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." Comstock, 273 F.3d at 703. However, a plaintiff does not have to show that the prison official acted "for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835. Rather, a plaintiff need only show that the official "recklessly disregard[ed]" a substantial risk of serious harm. Id. at 836.

More specific to this case, courts have held that a seizure disorder constitutes a serious medical need and providing anti-seizure medication to an inmate is necessary to adequately respond to the need. In Parsons v. Caruso, 491 F. App'x 597 (6th Cir. 2012), the court found that withholding anti-seizure medication for two days from an inmate with a seizure disorder is deliberate indifference to a serious medical need. Here, there appears to be no dispute that Alexander suffered from a serious seizure disorder, a serious medical condition, which plaintiff says was not properly treated, i.e. defendants were deliberately indifferent.

7

## 2. Allegations Against the Moving Defendants

Defendants argue that plaintiff has not plead plausible § 1983 claims against them because the complaint contains very little factual allegations as their role in Alexander's care. Plaintiff says that defendants have cited only small portions of the factual allegations in the complaint, taken them out of context, and mischaracterized them. Plaintiff says that when taken as a whole and assumed as true for purposes of the motion, the complaint contains sufficient factual allegations as to each of the moving defendants to make out a plausible § 1983 claim against them. Each defendant will be considered in turn below.

### a. Taymour

As to Taymour, defendants cite paragraph 62 of the complaint representing to this court that the allegations against Taymour are that he '"... noted in the decedent medical records" that Alexander would receive medication to address the alleged seizure disorder."' However, defendants omit most of the language of paragraph 62, which contains the specific allegations that "On April 17, 2014, the date that the Decedent was incarcerated, Defendant Taymour under the supervision of Defendant Azimi failed to evaluate, prescribe or administer anti-seizure medication until April 24, 2017 (8 days later)..." and "Defendant Taymour noted in the defendants medical records that the seizure medication would be tapered up later since decedent has gone 8 days without her seizure medication." (Doc. 1, ¶ 62 Pg. ID# 12). The complaint further alleges that "Decedent requested the Defendants Taymour and Novotny increase her seizure medications due to increased seizure activity. Id. at ¶ 63. , Complaint at paragraph 62. Additional allegations relating to Taymour appear in

8

paragraphs 65 (alleging he improperly charted a medication), 68 (renewed a medication despite lab results indicating it was not working), and 71 (failed to order regular lab tests to determine the proper amount of medication).  Based on these allegations, plaintiff has plead a claim against Taymour for deliberate indifference.

b.  Pei

As to Pei, however, the complaint is virtually silent.  Other than identifying her in paragraph 28, there are no specific factual allegations of wrongdoing by her.  Plaintiff does not address Pei at all in her response.  At best, Pei is lumped in with the "all defendants" conclusory allegations, see paragraph 134, which is insufficient to state a claim against her.  Pei must be dismissed.

c.  Lacy

As to Lacy, he is mentioned in paragraph 86 of the complaint.  In this paragraph, plaintiff alleges that he and two other physicians (non-moving defendants) scheduled Alexander for a clinic visit to examine her eye pressure as a consequence of her having eye surgery after which she required eye drops and eye pressure measurements.  Alexander missed the appointment and it was not rescheduled and she was not given eye drops.  Lacy is also named in Counts II and VIII, but there are no specific allegations relating to eye care - the allegations of wrongdoing relates to a failure to treat Alexander's seizures.  Plaintiff's response fails to mention Lacy at all.  Given the paucity of allegations against him, it cannot be said that plaintiff has alleged a claim for deliberate indifference based on any improper eye care.  The allegations are at best that Lacey failed to schedule an eye pressure appointment and Alexander may have been without eye drops for an unspecified period of time.  These allegations simply do

not rise to the level of deliberate indifference to a serious medical need. Lacy must be dismissed.

### d. Qin

As to Qin, the complaint at paragraph 90 alleges that Qin and another non-moving defendant placed Alexander in the "Kent ward" on November 15, 2014 after she requested medical care. The Kent ward is a segregated area. Qin is mentioned again in paragraph 110 in which plaintiff alleges and Oin and two other non-moving defendants "noted in their medical records dated November 15, 2014 that Decedent care to Healthcare 'with some type jerky movements, which she claims were from medications doses too low, she claims to need a higher does of Leppra and Lamictal." The paragraph goes on to allege that defendants "failed and refused to provide the necessary medications and emergency medical care." Qin is named in Counts III and IV.

The allegations, albeit thin, are sufficient to make out a deliberate indifference claim against Qin. Plaintiff alleges a specific instance in which Alexander asked for higher doses of medication and Qin and others did not provide it to her. Alexander died two days later from a seizure. Assuming the allegations are true and viewing the complaint as a whole, plaintiff has set forth a claim for deliberate difference against Qin due to a failure to properly treat Alexander for her seizure condition.

### e. Azimi

As to Azimi, the complaint alleges that Azimi supervised Taymour (paragraphs 68 and 71) and that Taymour, under his supervision failed to provide proper medications on specific dates.. Azimi is mentioned again in paragraph 100 where

plaintiff alleges that on November 16, 2014, the day before Alexander died, Azimi along with three other non-moving defendants were the medical professionals on call and responsible for providing Alexander with medical care. Azimi is named in Counts III and IV which contains allegations of improper medical care and a failure to treat Alexander on several days, including November 16, 2014.

Like Qin, the allegations against Azimi are somewhat sparse but taking the complaint as a whole and assuming all allegations are true, plaintiff has stated a claim for deliberate indifference against Azimi for failing to treat her seizure condition.

### f. Irfan and Closser

Unlike the defendants discussed above, Ifran and Closser, who joined in the motion, are psychiatrists. As to both of them, the complaint is nearly bare.

#### i. Irfan

Ifran is identified in paragraph 29. He does not appear in any substantive allegations. He is named in Counts II and IV. Plaintiff does not address him in her response. The failure to allege any conduct by Ifran that could amount to deliberate indifference results in the conclusion that he must be dismissed.

#### ii. Closser

Regarding Closser, she appears in an identifying paragraph, 30, and is named under Counts II and IV. She is also named in paragraph 101 as being on duty on November 17, 2014 but there is no allegation as to what Closser did or did not do from a medical standpoint. Under these circumstances, plaintiff has not made out a viable claim against Closser.

g. Corizon and Velitas

Finally, as to the corporate defendants, Corizon and Velitas, liability is premised upon them employing the medical service defendants and therefore allegedly responsible for the actions of their employees. Taking the complaint as a whole an din light of the fact that it appears some of their employees remain, dismissal of these defendants is not appropriate at this time.

VI. Conclusion

For the reasons stated above, Counts VI, VII, and VII are DISMISSED WITHOUT PREJUDICE. Count IV is DISMISSED as duplicative of Counts I, II, and III. Defendants' motion is GRANTED IN PART and DENIED IN PART. Pei, Lacy, Irfan, and Closser are DISMISSED.

SO ORDERED.

S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: September 20, 2017
Detroit, Michigan