UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LORAIN OBOMANU, as Personal
Representative of the Estate of
SABRIE L. ALEXANDER, Deceased,

    Plaintiff,

vs.                                                                                       Case Nos. 17-11435, 17-13749

MILLICENT WARREN, et al.,                                    HON. AVERN COHN

    Defendants.
_____/

## MEMORANDUM AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS

### I. Introduction

This is a prisoner civil rights case involving a death. Plaintiff Lorain Obomanu, as personal representative of the estate of Sabrie L. Alexander, is suing eleven (11) defendants Claire Pei, Robert Lacy, Mohammad Irfan, Mary Closser, Patricia Robinson, Chaviers, Audley Mamby, Angel Izua, Cartessa Brown, Bernard Goss, and Denise Bertoni. Plaintiff asserts a federal claim under 42 U.S.C. § 1983 for deliberate indifference to serious medical needs and an Eighth Amendment claim. In broad terms, plaintiff says that defendants failed to provide proper care for Alexander's medical conditions which ultimately resulted in her death.

This is the second lawsuit filed by plaintiff regarding Alexander's death. In the earlier case, plaintiff has sued thirty-seven individuals, two health services companies, and ten unnamed defendants, for a total of forty-one (41) defendants. Obomanu v.

Warren, et al, 17-11435. Defendants Corizon, Valitas and Claire Pei, Aryan Taymour, Robert Lacy, Pu Qin, and Mohammad Azimi filed a motion to dismiss. See Doc. 45 in case no. 17-11435. Mohammad Irfan and Mary Closser joined in the motion. The Court granted in part and denied in part the motion. Specifically, the Court ordered:

1. Plaintiff's gross negligence claims (Counts VI, VII, VIII) were DISMISSED WITHOUT PREJUDICE as the Court declined to exercise supplemental jurisdiction over them.

2. Count IV [alleging 8th Amendment violation] was DISMISSED as duplicative of Counts I, II, and III.

3. Pei, Lacy, Irfan, and Closser were DISMISSED for failure to state a claim.

See Doc. 66 in case no. 17-11435.

As noted above, plaintiff has named Pei, Lacy, Irfan, and Closser as defendants in the new case.

The Court has consolidated the two cases. See Doc. 44.

Before the Court is Pei, Lacy, and new defendant Mamby's motion to dismiss. (Doc. 32). Closser and Irfan have joined in the motion. (Doc. 35). Defendants contend that plaintiff's claims against them in the new case are barred by res judicata and still fail to state a claim. Following a hearing on the motion, the Court directed plaintiff to file a consolidated amended complaint under the lead case, case no. 17-11435. Plaintiff has done so. (Doc. 116). The Court also directed plaintiff to complete a chart outlining the following (1) name of defendant, (2) position of defendant, (3) time period of defendant's involvement, and (4) role of defendant in care/custody of decedent. Plaintiff lodged the chart with the Court. The matter is now ready for decision.

For the reasons that follow, the motion will be DENIED. As will be explained, the complaint contains sufficient allegations of wrongdoing against each defendant to survive dismissal. Discovery may reveal otherwise.

## II. Background

This case involves the death of Alexander, a 27 year old woman, while she confined at the Women's Huron Valley Correctional Center. Alexander was incarcerated from April 17, 2014 until November 17, 2014, the date of her death. Alexander suffered from a variety of medical conditions including a seizure disorder and mental health issues (bi-polar, anxiety, borderline personality). Alexander also had a bladder condition and asthma. Plaintiff alleges that during Alexander's seven month period of incarceration, her pleas for medical attention were ignored and she was punished for seeking attention by being placed in segregation and solitary confinement. While plaintiff alleges several instances of improper medical care, the most significant allegations pertain to the treatment of Alexander's seizures. The complaint alleges that Alexander was not given her seizure medication for the first eight days she was in custody and missed dosages of the medication over 80 times thereafter.

## III. Legal Standard

A Rule 12(b)(6) motion tests the sufficiency of a plaintiff's pleading. The Rule requires that a complaint "contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) (internal citation omitted). A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

Id. "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662; 129 S. Ct. 1937, 1949 (2009). The court is "not bound to accept as true a legal conclusion couched as a factual allegation."

"In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), th[e] Court may only consider 'the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice.'" Murray v. Geithner, 624 F. Supp. 2d 667, 671 (E.D. Mich. 2009) (citing 2 James Wm. Moore et al., Moore's Federal Practice 12.342 (3d ed. 2000)); see also Weiner v. Klais & Co., 108 F.3d 86, 89 (6th Cir. 1997) (holding that a document incorporated by reference in a complaint can be introduced by a defendant if it is not attached by plaintiff).

IV. Analysis

A. Res Judicata

Defendants contend that they should be dismissed from this case because the Court's dismissal order in the earlier case operates as res judicata. Specifically, defendants say that claim preclusion prohibits plaintiff's allegations against Lacy, Pei, Irfan, and Closser. Similarly, defendants say issue preclusion prohibits plaintiff's allegations against new defendant, Mamby.

Claim preclusion . . . refers to [the] effect of a prior judgment in foreclosing a subsequent claim that has never been litigated, because of a determination that it should have been advanced in an earlier action. Issue preclusion, on the other hand,

4

refers to the foreclosure of an issue previously litigated. Mitchell v. Chapman, 343 F.3d 811, 818 n.5 (6th Cir. 2003) (citing Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 77 n.1 (1984)).

A claim is barred by res judicata if there is:

(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

Browning v. Levy, 283 F.3d 761, 772 (6th Cir. 2002) (quoting Bittinger v. Tecumseh Prods. Co., 123 F.3d 877, 880 (6th Cir. Deficiencies)). A Rule 12(b)(6) dismissal for failure to state a claim operates as a decision on the merits for res judicata purposes. Federated Dep't Stores, Inc. v. Moitie, 542 U.S. 394, 399 n. 3 (1981).

Here, while the dismissal of Pei, Lacy, Irfan, and Closser was "final" as to them, it did not end the case. Moreover, the dismissal was based on plaintiff's failure to plead sufficient factual allegations of wrongdoing against them. Thus, while there is some merit to defendants' res judicata argument, when considered within the context of this case - a death occurring at a jail where the victim had numerous health conditions and the difficulties in determining at the pleading stage the level of involvement of many different defendants - the doctrine has less appeal. While it would have been procedurally better for plaintiff to have amended her complaint as to the dismissed defendants in the earlier case, whether by a motion for leave to amend or reconsideration of the dismissal, the more prudent course is to consider whether the complaint in this case states plausible claims against the defendants, i.e. whether plaintiff has cured the factual deficiencies in the earlier case. Defendants, perhaps

anticipating this approach, wisely argues in the alternative that the new complaint falls factually short as well.

### B. Failure to State a Claim

#### 1. Pleading a § 1983 Claim

As an initial matter, although plaintiff has plead separate "deliberate indifference" claims under § 1983 and a "cruel and unusual conditions of confinement" claim under the 8th Amendment, they are more appropriately considered a single claim. See Wilson v. Seiter, 501 U.S. 294, 303 (1991) (("[W]e see no significant distinction between claims alleging inadequate medical care and those alleging inadequate 'conditions of confinement.'"). Just as the Court dismissed plaintiff's 8th Amendment claim in the earlier case as duplicative of her § 1983 claim, the 8th Amendment claim in this case must also be dismissed.

#### 2. Deliberate Indifference

Regarding pleading a § 1983 deliberate indifference claim, the 8th Amendment's Cruel and Unusual Punishment Clause prohibits prison officials from inflicting "unnecessary and wanton infliction of pain" upon inmates. Ivey v. Wilson, 832 F.2d 950, 954 (6th Cir. 1987) (internal citations omitted). " 'Deliberate indifference' by prison officials to an inmate's serious medical needs constitutes 'unnecessary and wanton infliction of pain' in violation of the Eight[h] Amendment's prohibition against cruel and unusual punishment." Miller v. Calhoun Cty., 408 F.3d 803, 812 (6th Cir. 2005) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).

A deliberate indifference claim has an objective and a subjective component. Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir. 2001). The objective component

requires a plaintiff to allege that the medical need at issue is " 'sufficiently serious.' " Id. at 702-03 (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." Comstock, 273 F.3d at 703. However, a plaintiff does not have to show that the prison official acted "for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835. Rather, a plaintiff need only show that the official "recklessly disregard[ed]" a substantial risk of serious harm. Id. at 836.

More specific to this case, courts have held that a seizure disorder constitutes a serious medical need and providing anti-seizure medication to an inmate is necessary to adequately respond to the need. In Parsons v. Caruso, 491 F. App'x 597 (6th Cir. 2012), the court found that withholding anti-seizure medication for two days from an inmate with a seizure disorder is deliberate indifference to a serious medical need. Here, there appears to be no dispute that Alexander suffered from a serious seizure disorder, a serious medical condition, which plaintiff says was not properly treated, i.e. defendants were deliberately indifferent.

### 3. Allegations Against the Moving Defendants

Defendants argue that, as in the earlier case, plaintiff has not plead plausible § 1983 claims against them because the complaint contains very little factual allegations as their role in Alexander's care. Plaintiff again argues that defendants have cited only small portions of the factual allegations in the complaint, taken them out of context, and mischaracterized them. Plaintiff says that when taken as a whole and assumed as true

for purposes of the motion, the complaint contains sufficient factual allegations as to each of the moving defendants to make out a plausible § 1983 claim against them. Each defendant will be considered in turn below.

1. Pei

In dismissing Pei from the earlier case, the Court said:

> As to Pei, however, the complaint is virtually silent. Other than identifying her in paragraph 28, there are no specific factual allegations of wrongdoing by her. Plaintiff does not address Pei at all in her response. At best, Pei is lumped in with the "all defendants" conclusory allegations, see paragraph 134, which is insufficient to state a claim against her. Pei must be dismissed.

The complaint in this case[1] provides more detail. Plaintiff now alleges that Pei "failed to provide" Alexander "with immediate medical treatment" on "September 10 and 15, 2014, as well as throughout [Alexander's] incarceration[.]" (Doc. 1, complaint PgID 26, ¶ 99). Pei is also mentioned in paragraph 43 which alleges he had knowledge or should of have knowledge of "kites" that Alexander submitted "in August and October 2014" "requesting counseling concerning custodial sexual abuse" but did not follow through on the requests.

In her response, plaintiff also says that "further records have revealed that on September 15, [Pei] was specifically make aware of the panic attack that [Alexander] was having and that she was asking for a doctor." (Doc. 36, PgID 408, p. 28). This statement, however, does not appear in the complaint.

---

[1]The citations are to the Doc. 1, the original complaint, not the newly filed amended and consolidated complaint.

Defendants argue that plaintiff is impermissibly seeking to hold Pei vicariously liable for the acts of other defendants as well as non-defendant actors which is not permitted. Defendants also say that plaintiff does not factually links Pei to Alexander's death on November 17.

Considering the new complaint as a whole, plaintiff has alleged a claim against Pei. While still somewhat sparse, plaintiff has now alleged improper treatment on certain dates liked to Pei. Whether a claim will survive summary judgment after the record is developed is another matter.

### 2. Lacy

In the earlier case, the Court dismissed Lacy, explaining:

> As to Lacy, he is mentioned in paragraph 86 of the complaint. In this paragraph, plaintiff alleges that he and two other physicians (non-moving defendants) scheduled Alexander for a clinic visit to examine her eye pressure as a consequence of her having eye surgery after which she required eye drops and eye pressure measurements. Alexander missed the appointment and it was not rescheduled and she was not given eye drops. Lacy is also named in Counts II and VIII, but there are no specific allegations relating to eye care - the allegations of wrongdoing relates to a failure to treat Alexander's seizures. Plaintiff's response fails to mention Lacy at all. Given the paucity of allegations against him, it cannot be said that plaintiff has alleged a claim for deliberate indifference based on any improper eye care. The allegations are at best that Lacy failed to schedule an eye pressure appointment and Alexander may have been without eye drops for an unspecified period of time. These allegations simply do not rise to the level of deliberate indifference to a serious medical need. Lacy must be dismissed.

In the new complaint, plaintiff describes Lacy's conduct in paragraph 100 and alleges that Lacy "failed to provide" Alexander "with immediate medical treatment" on "June 6, and September 15, 2014, as well as throughout [Alexander's] incarceration[.]" (Doc. , PgID 27, ¶ 100). Lacy is also mentioned in paragraph 55 in which plaintiff alleges that plaintiff was given eye drops to keep in her cell when Lacy knew the drops

9

should be refrigerated. Plaintiff also alleges that Alexander missed an appointment with Lacy. Finally, Lacy is also mentioned in paragraph 43 which alleges he had knowledge or should of have knowledge of "kites" that Alexander submitted "in August and October 2014" "requesting counseling concerning custodial sexual abuse" but did not follow through on the requests.

In her response to the motion, plaintiff says that on September 15, "Lacy received reports of [Alexander] having seizures in segregation and subsequently reported a head injury, but noting was done." (Doc. 36, PgID 408). This allegation, however, is not in the new complaint.

Again plaintiff has added more factual detail as to Lacy. While Lacy is implicated in eye care, he is also alleged to know about Alexander's other medical conditions. Thus, the new complaint sufficient states a claim against Lacy. Discovery may reveal otherwise.

### 3. Mamby

Mamby was not named in the earlier case. In this case, plaintiff claims that Mamby "failed to provide" Alexander "with immediate medical treatment" on "May 29, August 3, August 4, and November 17, 2014, as well as throughout [Alexander's] incarceration[.]" (Doc. 1, PgID 24, ¶ 94). Mamby is also mentioned in paragraph 43 which alleges he had knowledge or should of have knowledge of "kites" that Alexander submitted "in August and October 2014" "requesting counseling concerning custodial sexual abuse" but did not follow through on the requests.

In her response, plaintiff says that during these four contacts with Alexander, including the day she died, Mamby requested treatment from him but did not receive it.

10

These factual allegations are sufficient to state a claim against Mamby.

### 4. Irfan and Closser

#### I. Irfan

In the earlier case, the Court dismissed Irfan, stating:

> Irfan is identified in paragraph 29. He does not appear in any substantive allegations. He is named in Counts II and IV. Plaintiff does not address him in her response. The failure to allege any conduct by Ifran that could amount to deliberate indifference results in the conclusion that he must be dismissed.

In this case, Irfan is identified in paragraph 14 as a physician. He is mentioned again in paragraph 43 which alleges he had knowledge or should of have knowledge of "kites" that Alexander submitted "in August and October 2014" "requesting counseling concerning custodial sexual abuse." He is further mentioned in paragraph 93 which alleges:

> IRFAN knew of Decedent's serious medical needs on April 17, 2017 when he first evaluated her and throughout the dates of contact he had with her and/or through information received on additional dates, including but not limited to, May 27, June 3, June 17, and August 19, 2014, as well as throughout her incarceration, but failed to provide her with medical treatment for her serious medical needs..."

In her chart, plaintiff says that Ifran failed to give decedent her medications for 8 days and otherwise failed to follow up on her medical needs. Again, plaintiff has provided more detailed allegations against Ifran so as to state a plausible claim.

#### ii. Closser

In the earlier case, the Court dismissed Closser, stating:

Regarding Closser, she appears in an identifying paragraph, 30, and is named under Counts II and IV. She is also named in paragraph 101 as being on duty on November 17, 2014 but there is no allegation as to what Closser did or did not do from a medical standpoint. Under these circumstances, plaintiff has not made out a viable claim against Closser.

Now, plaintiff identifies Closser in paragraph 15 as a physician. She mentions Closser again in 43, alleging she had knowledge or should of have knowledge of "kites" that Alexander submitted "in August and October 2014" "requesting counseling concerning custodial sexual abuse." Closser is also alleged in paragraph 65 as being "on call/duty" on November 15 to November 17 and "responsible for providing medical care to [Alexander] for her serious medical needs. Finally, Closser is mentioned in paragraph 101 as alleged to have had contact with Alexander on November 17 (the date she died) and failed to provide adequate medical care.

In response, Closser says that there are "no medical records" which bear her name indicating she treated Alexander on November 17 or 30 days prior "such that there could be a casual connection between her care and treatment as a psychiatrist and the medical needs of [Alexander] for a seizure disorder."

Plaintiffs chart states that "records indicate that she was working on 11/17/14, the date of the Decedent's death as a provider. However, one witness testified to the contrary. May be dismissed voluntarily upon further discovery."

On the slenderest of reeds, plaintiff's allegations against Closser have sufficiently alleged wrongdoing by Closser to survive dismissal.

### C. Observation

The consolidated complaint names forty two (42) defendants as well as doe defendants. Plaintiff would be well served to voluntarily dismiss a defendant where discovery reveals they were not involved with or otherwise culpable in Alexander's care. The shotgun approach, buttressed by some specific allegations, is sufficient to get past the pleading stage. Soon, however, plaintiff will need to use a rifle as the case

progresses toward summary judgment potential trial.

SO ORDERED.

                                               S/Avern Cohn
                                               AVERN COHN
                                               UNITED STATES DISTRICT JUDGE

Dated: 6/18/2018
        Detroit, Michigan